## SNOW, Appellant, v. BASS et al.

### Division One, April 1, 1903.

1. **Deed of Trust:** PAYMENT BEFORE MATURITY: AGREEMENT. By the terms of a deed of trust it was "expressly agreed" that the mortgagors might "sell any portion of the above described property at its fair and reasonable value and have the same released from the lien of this incumbrance by paying the full purchase price and value thereof on the indebtedness hereby secured,"all interest on such sums so paid to cease and determine from the next semiannual interest payment period thereafter, and no such sale to be complete and this agreement not be binding unless the payee of the note approve the price. *Held*, first, that the purpose of this agreement was that the incumbrance might be paid off at any time before maturity that the mortgagors tendered the entire debt, from whatever source received; second, that no sale was absolutely necessary, but if it were a necessary condition it was fully met by a second mortgage on the premises and a tender of so much of the money thereby received as amounted to the entire debt, principal and interest; third, a tender of the whole sum amounted to a discharge of the real estate from the lien of the deed of trust.

2. ——: REFUSAL TO RECEIVE DEBT: TEN PER CENT PENALTY. The penalty of ten per cent provided by the statute for failure to acknowledge

satisfaction of a deed of trust, does not apply to persons who have never received satisfaction of their debts, although tendered. That penalty can be assessed only against persons who receive satisfaction; it can not be assessed against a payee to whom the debt is tendered, who, under a mistaken view that it is not due under the contract, declines to accept it till due.

Appeal from Greene Circuit Court.—*Hon. Jas. T. Neville,* Judge.

REVERSED AND REMANDED (*with directions*).

*Johnson & Lucas* for appellant.

(1) The answer fails to show that any sale of the property had been made as contemplated by the deed of trust, or that appellant had ever consented thereto or been consulted about the matter, without which no right to pay before maturity existed in respondent, and for this reason appellant's objection to the introduction of any evidence under the answer ought to have been sustained, and the court erred in its refusal to do so. Mercantile Co. v. Chapman, 78 Mo. App. 620; Connelly v. Priest, 72 Mo. App. 678; Edelen v. Worth, 69 Mo. App. 126; Coal Co. v. Brick Co., 66 Mo. App. 301; Williams v. Railroad, 112 Mo. 490; Adams v. Schnader, 35 Am. St. 898; Pierce v. Merrill, 70 Am. St. 62; Franklin v. Schultz, 57 Pa. 37. (2) Declarations numbered one and two, offered by appellant, ought to have been given, and the refusal to do so was error. It was not claimed that the property had been actually sold, but mortgaged, and that without consultation with or consent of appellant. The right of respondent to pay before the maturity of the paper depended on the money being derived from a sale of the property. Blaine v. Geo. Knapp Co., 140 Mo. 252; Williams v. Railroad, 153 Mo. 499; Mercantile Co. v. Chapman, 78 Mo. App. 619; Wood v. Bobbst, 56 Mo. App. 427; Thornton v. Royce, 56 Mo. App. 182; Beattie v. Coal Co., 56 Mo. App. 230; Electric Co. v. Bry, 88 Mo. App. 138; Paving

Co. v. Construction Co,, 111 Fed. 696; Pierce v. Merrill, 79 Am. S. 60; Shenenburger v. Ins. Co., 87 N. W. 493; Looker v. Ins. Co., 88 N. W. 375; Fruin v. Railroad, 89 Mo. 404; Pavey v. Burch, 3 Mo. 447; Lumber Co. v. Robick, 84 Mo. App. 551; Rapalje & Lawrence Dictionary, p. 1144; People v. Cox, 45 Cal. 344; Dickerson v. Bridge Co., 147 Mo. 253.  (3)  The decree ought to have been for appellant, and the case being here on conceded facts, this court will enter such decree as the trial court ought to have entered, dismissing respondent's counterclaim and rendering judgment for appellant, as prayed in his petition.  R. S. 1899, sec. 866; State ex rel. v. Weaver, 92 Mo. 682.  (4)  Under the facts herein respondent was not within the provisions of sections 4358 and 4363, Revised Statutes 1899, and it was error to allow his counterclaim and thereby visit appellant with a penalty for his refusal to satisfy the deed of trust.  Woods v. Ethridge, 62 Mo. App. 131.

*Benj. U. Massey* for respondents.

(1)  All the recitals in the deed of trust in relation to the manner and time of payment of the notes are incorporated into and form part of said notes and said contract concerning them. Haywood v. Perrin, 10 Pick. 228; Wheelan v. Freeman, 13 Pick. 105; Franklin Savings Company v. Reed, 125 Mass. 365; Costello v. Coswell, 127 Mass. 293.  (2)  The contract as set out in said notes and deed of trust must be so construed as to carry into effect the intention of the parties, and such intention must be ascertained from the language of these instruments and the facts and circumstances attending the execution thereof.  Determined by this rule this contract means said mortgage debt could be all paid or a part paid at any interest-paying time mentioned in said notes at the option of the makers thereof.  It means this, else the words in relation to these payments are but meaningless verbiage.  Pollock, Principles of

Contract, p. 434; Mathew v. Danahy, 26 Mo. App. 600; Mantz v. Maguire, 52 Mo. App. 136; Enterprise Soap Works v. Sayers, 55 Mo. App. 15; Mastin v. Stoller, 107 Mo. 325; Lovelace v. Travelers' Protective Association, 126 Mo. 111; Mumford v. Stevens, 68 Mich. 61; Mathews v. Phelps, 1 Am. St. 583; Smith v. Kerr, 2 Am. St. 366; Dedreck v. Wolfe, 24 Am. St. 285; Monmouth P. Assn. v. Wallis I. Works, 39 Am. St. 632; Armory Mfg. Co. v. Railroad, 59 Am. St. 67; Kendrick v. Life Ins. Co., 70 Am. St. 596. (3) The tender made September 29, 1900, to Fairs, the agent of Snow, to receive payment of said notes, and having said notes and deed of trust in his possession, was a good and sufficient tender of payment of same. Whelan v. Riley, 61 Mo. 565; Campbell v. Seely, 43 Mo. App. 23. (4) The effect of that tender was to stop the interest and discharge the lien of said deed of trust. Olmstead v. Tarsney, 69 Mo. 399; Thornton v. Bank, 71 Mo. 232; McClurg v. Trust Co., 137 Mo. 106; Hudson v. Glenco, 140 Mo. 103. (5) It is not required to keep the tender on deposit or to keep it continuously in court. Field v. Oliver, 43 Mo. 203; Whelan v. Reilly, 61 Mo. 565; Clark v. Drake, 63 Mo. 360; Landis v. Saxton, 89 Mo. 383; Kline v. Vogel, 90 Mo. 244; Joplin v. Walton, 138 Mo. 490. (6) The refusal to satisfy the deed of trust after said tender was made entitles the debtor, Bass, to the ten per cent absolute damages under the statute. Sec. 4363, R. S. 1899; Campbell v. Seely, 38 Mo. App. 298; Campbell v. Seely, 43 Mo. App. 23; Dodson v. Clark, 49 Mo. App. 148; Olmstead v. Tarsney, 69 Mo. 399; Thornton v. Bank, 71 Mo. 232. (7) This ten per cent damages can be recovered by plea of counterclaim in this suit. Kamrick v. Castleman, 23 Mo. App. 481; Weiner v. Peacock, 31 Mo. App. 238; Campbell v. Seely, 43 Mo. App. 23; Field v. Oliver, 43 Mo. 200; Reppy v. Reppy, 46 Mo. 571; Smith v. Spengler, 83 Mo. 408; City of Kansas v. Ridenour, 84 Mo. 253; Green v. Conrad, 114 Mo. 672; Transp. Co. v. Boggiano, 52 Mo. 294; Ritchie

v. Hayward, 71 Mo. 560; Emery v. Railroad, 77 Mo. 339.

ROBINSON, J.—This action was begun by plaintiff filing his petition in four counts upon four coupon notes of the aggregate amount of five hundred and sixty dollars, for which sum with interest thereon he asked judgment. To plaintiff's petition defendant filed the following answer:

"Come the defendants and make now their appearance to this cause of action, and answering say:

"1. In answer to the first and third counts of said petition, these defendants admit that they executed the coupons, or interest notes, or instruments of writing, as set out in said first and third counts of said petition and attached as exhibits thereto; and admit that they are indebted to the plaintiff, by reason of the execution of said instruments, in the sum of $280; that is, by reason of the said coupons or instruments of writing declared on in the first count of said petition in the sum of $200, and by reason of the coupon or instrument of writing declared on in the third count of said petition in the sum of $80; but defendants deny that they are indebted to said plaintiffs by reason of any interest on said instruments of writing, or either of them, or for any further or other sums on the instruments declared on in the first and third counts of said petition than in the aggregate sum of $280, and which said sum of $280 the defendants here tender in open court to the plaintiff and ask to be discharged from the action declared on in said counts, with their costs.

"2. Defendants admit that they executed the instruments declared on in the second and fourth counts of said petition, copies of which instrument are attached thereto; but defendants say that they are not indebted to the plaintiff by reason of the execution of said instruments, and were not at the time of the institution of this suit; that said coupons, or interest notes, declared

on in said second and fourth counts of said petition, copies of which are attached to said petition, were at the time of the institution of this suit duly paid off and discharged. Wherefore defendants pray to be discharged with their costs.

"3. Defendants, for another and further defense to said cause of action, set out in all the counts of said petition, say that prior to the 1st day of October, 1897, the said Sampson Bass, one of the defendants herein, was in litigation with the said Brinkerhoff-Faris Trust and Savings Company (hereinafter designated Savings company), an organization duly incorporated under the laws of the State of Missouri, and located and having its place of business in the city of Clinton, in the State of Missouri. That at that time an adjustment and agreement of all matters in litigation was reached between said parties—the defendant, Sampson Bass, and the said Savings company—whereby the said Sampson Bass admitted an indebtedness of $7,000 to said Savings company, but not then being able to pay said amount, and having no property out of which to pay said debt than the real estate hereinafter mentioned, defendants agreed that they would execute to said Savings company their certain promissory notes for the said sum of $7,000, provided they should be permitted to pay said notes from proceeds of sale of real estate from time to time as said real estate should be sold; and in pursuance of said agreement, and for the consideration aforesaid, defendants, on October 1, 1897, made, executed and delivered to the said Savings company their two certain promissory notes in words and figures as follows:

" 'No. 3573A                                    $2,000
" 'United States of America.
" 'State of Missouri.            Real Estate Bond.
" 'Know all men by these presents, that we, Sampson Bass and Eliza Bass, of Greene county, in the State of Missouri, for value received, are justly indebted to

the Brinkerhoff-Faris Trust and Savings Company of Clinton, Missouri, in the sum of two thousand dollars, which sum of money in New York exchange we hereby promise to pay to the said Brinkerhoff-Faris Trust and Savings Company, or order, on the first day of October, A. D. nineteen hundred and two at the office of the said Brinkerhoff-Faris Trust and Savings Company, at Clinton, Missouri, with interest at the rate of eight per cent per annum from this date until due or default be made, and if not paid when due, or if a default occur in the payment of any of the interest coupons hereto attached, then this bond to bear interest at the rate of eight per cent per annum thereafter, said interest until the maturity of this bond being payable semi-annually on the first day of April and October in each year according to the terms of ten coupons of even date herewith attached to the bond and numbered from one to ten inclusive. This bond is secured by a deed of trust of even date herewith being the only lien upon certain real estate situated in Greene county and State of Missouri, which deed of trust is duly recorded, and is payable according to the conditions in said deed of trust expressed. Dated at Clinton, in the county of Henry and State of Missouri, on the first day of October, 1897.

" 'SAMPSON BASS,

" 'ELIZA BASS.'

"That the instruments sued on as set out in the second and fourth counts of said petition are two of the ten coupons mentioned in the note just above described, and are numbers 4 and 5 of said coupons.

" 'No. 3573B                                          $5,000.

" 'United States of America.

" 'State of Missouri.                    Real Estate Bond.

" 'Know all men by these presents, that we, Sampson Bass and Eliza Bass, of Greene county, in the State of Missouri, for value received are justly indebted to the Brinkerhoff-Faris Trust and Savings Company of Clinton, Missouri, in the sum of five thousand dollars,

which sum of money in New York exchange we hereby promise to pay to said Brinkerhoff-Faris Trust and Savings Company, or order, on the first day of October, A. D. nineteen hundred and two at the office of the said Brinkerhoff-Faris Trust and Savings Company, at Clinton, Missouri, with interest at the rate of eight per cent per annum from this date until due or default be made, and if not paid when due, or if a default occur in the payment of any of the interest coupons hereto attached, then this bond to bear interest at the rate of eight per cent per annum thereafter, said interest until the maturity of this bond being payable semi-annually on the first day of April and October of each year, according to the terms of ten coupons of even date herewith attached to the bond and numbered from one to ten inclusive.   This bond is secured by a deed of trust of even date herewith being the only lien upon certain real estate situated in Greene county and State of Missouri, which deed of trust is duly recorded, and is payable according to the conditions of said deed of trust expressed.   Dated at Clinton in the county of Henry and State of Missouri, the first day of October, 1897.

" 'SAMPSON BASS,<br>" 'ELIZA BASS.'

"That the instrument sued on and set out in the first and third counts of said petition are two of the coupons mentioned in the second note just above described as numbers 4 and 5 of said coupons.   That for the purpose of securing the payment of both said notes herein set out, and all the coupons thereto to each note attached, defendants on October 1, 1897, made, executed and delivered to John H. Lucas and Herman P. Faris, as trustees, their certain deed of trust conveying to said trustees the real estate therein described, and in which is set out the terms and conditions upon which said notes might be paid, which said deed of trust is in words and figures as follows:   . . .

(In lieu of the deed of trust here called for and copied in full in defendants' answer, we will insert, to save space, only these two provisions thereof, out of the ordinary in such instruments and of peculiar significance in this controversy, to-wit:)

*First.* "It being expressly agreed that first parties may sell any portion of the above described property at its fair and reasonable value and have the same released from the lien of this incumbrance by paying the full purchase price and value thereof on the indebtedness hereby secured, and all interest on such sums so paid shall cease and determine from the next semiannual interest payment thereafter, but no such sale shall be completed or this agreement be binding unless the third party is first consulted and the purchase price of such proposed sale is satisfactory to it."

*Second.* "Or if said first party shall give notice of intention to make payment before due, as hereinbefore provided, and payment in accordance with said notice is not made, then it is hereby specifically agreed that the whole debt shall, at the option of the legal holder of said bond and unpaid coupons, become due and payable and this deed shall remain in force."

"That by the terms and conditions of said deed of trust, it was expressly agreed that the payees of said notes, the first parties in said deed of trust and the defendants in this suit, might sell any portion of the above-described property mentioned in said deed of trust at its fair and reasonable value and have said real estate so sold released from this incumbrance by paying the full purchase price and value received therefor on the indebtedness secured by said deed of trust; and it is further provided that said notes hereinbefore mentioned and set out in said petition might be paid or partially paid from the sale of said mortgaged property, or any portion thereof, as in said deed of trust set out, and that such payment of said notes, or partial payments thereon, might be made at any interest-paying

time mentioned in said notes; or such payments might be made at any time by paying the principal and all interest accruing thereon up to the time of the next semiannual interest paying period next occurring after said payment. That said notes herein set out, each and both of them, are payable, principal and interest thereon, in New York exchange as evidenced by said principal notes and coupon notes attached to said principal notes at the office of said Savings company at Clinton, Missouri; the said interest is payable semiannually on the 1st day of April and October in each year in New York exchange. That by the terms and conditions aforesaid, as set out in said deed of trust and in said notes, the defendants were given the option or privilege of paying said notes and interest thereon at the office of said Savings company in said city of Clinton, Missouri, at any interest-paying time as mentioned in said notes and coupons, or at any other time, upon condition that the interest up to the next occurring interest-paying period should be tendered, together with the principal at the time of making such payment or tender. That exercising such privilege and option these defendants sold a portion of the real estate in said deed of trust described, and on September 29, 1899, tendered at the office of said Savings company, in the city of Clinton, Missouri, the sum of $7,280 to Herman P. Faris, the secretary and treasurer of said Savings company and one of the trustees mentioned in said deed of trust, and the agent of plaintiff to receive the payment of said notes, at the office of said Savings company in the city of Clinton, Missouri, the said sum of $7,280 being the amount of principal and interest due on the two principal notes herein mentioned on the 1st day of October, 1899, he the said Faris then and there having in his possession, as agent of said plaintiff, the said notes for $5,000 and $2,000, together with the coupons here sued on and the other coupons attached to said notes, and the said defendants then and there ten-

dered to him, the said Faris, agent and trustee as afore-
said, in New York exchange, the sum of $7,280 being
the amount of the principal of said notes and all the
interest on both and each of them up to October 1, 1899,
which said October 1, 1899, was the first semiannual in-
terest-paying period next after said tender, and de-
manded the surrender of said notes with all coupons
attached, including the coupons here sued on; that the
said Faris refused to accept said $7,280 in New York
exchange and refused to deliver up to defendants said
principal notes and coupons, because, as he, the said
Faris, claimed and asserted, the said notes had been as-
signed and were not then the property of said Savings
company. And now again come the defendants herein
in court and tender for the use of the plaintiff the sum
of $7,280 in payment of said principal notes of $5,000
and $2,000 and all interest due thereon up to the 1st
day of October, 1899, and pray that said deed of trust
be cancelled and said notes be delivered up to defend-
ants, and that they, the defendants, be discharged with
their costs.

"4. And defendants now, as a counterclaim
against said indebtedness of defendants to plaintiff, as
in the third defense of this answer set out, and adopt-
ing all of the allegations of said third defense of this
answer as part of their statement of counterclaim
further say, that about August 1, 1899, defendants no-
tified said Faris, one of the trustees in said deed of
trust and the secretary and treasurer of said Savings
company, that they, the said defendants, desired to pay
off all of said notes and all interest due thereon up to the
first day of October, 1899. That thereupon the said
Faris informed the plaintiff, who had at that time be-
come and was the owner and holder of said notes, that
application was made by the defendants herein to pay
same and said notes were sent by the said plaintiff, who
was then and now is a non-resident of this State (his
exact place of residence is not known to these defend-

ants), to said Faris and the said Faris thereupon notified said defendants that said notes would be at the office of said Savings company in Clinton, Missouri, for payment. That thereupon these defendants arranged and got money from the proceeds of the sale of their land so described in said deed of trust, and on September 29, 1899, purchased New York exchange to the amount of $7,280 as aforesaid, and then and there went to the office of said Savings company at the said city of Clinton, and there tendered to the said Faris, who at that time, as the agent of the plaintiff, had said notes and said deeds of trust in his possession, the said notes being then and there in writing duly indorsed by the plaintiff, so that they might then and there be transferred to these defendants, or to their order, so that they might be presented to the recorder of deeds of Greene county, Missouri, where said deed of trust was recorded, and said deed of trust then and there might be released and satisfied on the margin of the record thereof in the manner provided by law for the satisfaction of deeds of trust, the said sum of $7,280 in New York exchange in the manner and place, as in said third defense set out, and at the time of making such tender these defendants further tendered to him, the said Faris, the additional sum of one dollar to pay the expenses of executing a sufficient deed of release of said deed of trust, and demanded of the said Faris that the owner and holder of said notes make a good and sufficient deed of release of said deed of trust or enter satisfaction upon the margin of the record of said deed of trust, or that said notes be delivered to the defendants so that they, said defendants, might present same to the recorder of deeds of Greene county, Missouri, for cancellation and release, and he the said Faris refused to accept said money at said time, refused to deliver to said defendants said notes and deed of trust, and refused to enter satisfaction of said notes upon the margin of the record of the deed of trust, although he the said Faris held said notes in his posses-

sion duly indorsed by plaintiff, so that he the said Faris was empowered and authorized to enter such satisfaction upon the margin of the record of the deed of trust, and refused to obtain a good and sufficient deed of release from said plaintiff of said deed of trust, and refused to make as assignee and holder of said notes, a deed of release of said deed of trust, and although he the said Faris, agent of plaintiff as aforesaid, has frequently been requested to enter such satisfaction or to procure a sufficient deed of release of said deed of trust, said plaintiff refused then to execute the release of said deed of trust in any of the ways above set out, and has continued to refuse, and has not within thirty days after such request and has not yet acknowledged satisfaction on the margin of the record of said deed of trust, or caused to be delivered to these defendants, the persons tendering the payment of said notes, a sufficient deed of release of said deed of trust to the owners or holders of said notes.   Wherefore, these defendants say that under and by virtue of the provisions of section 4363, of the Revised Statutes of 1899, of Missouri, the plaintiff has become liable to these defendants in the sum of ten per cent of the amount of said notes in said deed of trust described absolutely, that is to say the sum of $728, for which sum of $728 these defendants pray judgment, and ask that the same be allowed as a counterclaim against said sum of $7,280 here rendered to plaintiff by these said defendants.''

I.   To defendants' answer plaintiff replied, denying the allegations thereof, and upon the issues thus joined the case was heard and determined by the trial court, resulting in a decree in substantial compliance with the prayer of defendants' answer. At the trial there was but little controversy over the facts, and so far as concerns this appeal they may be said to be conceded.

The defendants without consulting plaintiff, procured $8,500 from third parties, by the placing of a

Vol 174 mo—11.

second deed of trust upon the property named in the deed of trust given to secure the notes in controversy, and with the money thus obtained on September 28, 1899, tendered to the trust company, then holding the notes in question, as the agent of plaintiff, the sum of $7,280, this being the amount of the principal, and the interest due on plaintiff's notes to October 1, 1899, the approaching semiannual interest payment dates provided in the notes, and one dollar additional to pay the expense of having their deed of trust satisfied of record, and demanded that the deed of trust be satisfied upon the records of Greene county. This tender the plaintiff refused and afterwards on the sixth day of April, 1900, began this suit on the four coupon notes above set out asking only for a money judgment thereon, etc.

The judgment of the trial court was that defendants were indebted to plaintiff in the sum of $7,280 on account of the notes in question, and the interest thereon to October 1, 1899, and that defendants were entitled to recover of plaintiff on their counterclaim in the sum of $728. It was then ordered and adjudged that upon the payment by defendant of the sum of $6,552 to the clerk of the court for the benefit of plaintiff, said clerk being appointed receiver to take and hold said sum for payment to plaintiff if he will receive same and if not then to be subject to the further order of the court; that the deed of trust made by defendants to secure said notes and held by plaintiff be ordered and decreed satisfied, and the real estate described therein be discharged and released from the lien incumbrance of said deed of trust, and that defendant pay cost of suit.

But two questions are presented on this appeal, the first being whether under the provisions of the deed of trust above quoted and upon the conceded facts shown, the defendants had the right to pay off their notes before the maturity thereof, as expressed upon their face, when the money tendered to pay same had not been obtained from an absolute sale of the real estate named

in the deed of trust, with the consent and approval of the plaintiff; and, second, whether the statutory penalty of section 4363, Revised Statutes 1899, for non-satisfaction of record can be enforced against a mortgagee, who in good faith believed the debt secured by his mortgage or deed of trust is not due, when the tender is made, and when no actual acceptance of the money tendered occurs.

No question is made by appellant that the recitations in the deed of trust in relation to the manner and time of payment of the notes in suit, are not properly considered, as incorporated into and as forming a part thereof, for the purpose of determining when a payment may be made thereof at a time other than at their face maturity; but his contention is, that the face of the notes must determine the time of their maturity for payment unless it is shown that defendants have complied strictly with all the requirements of the terms of the deed of trust maturing the notes at an earlier or different period; and that as defendants have shown, by their own testimony, that they did not ask to have these notes paid off by money arising from the sale of a part or all of the land named in the deed of trust securing them at the time the tender was made to him, but that in fact they asked to pay off said notes with money obtained by placing upon said land a second deed of trust to other parties, they could not then mature their notes for the reception of the money tendered, and that the right of respondents to pay the notes in question before their maturity, as expressed upon their face depended strictly upon the fact that the money tendered must have been derived from the sale of the mortgaged property and not otherwise.    Plaintiff's contention in this regard is based upon his construction of the meaning of this paragraph of the deed of trust in question:

"It being expressly agreed that first parties may sell any portion of the above described property at its fair and reasonable value and have the same released

from the lien of this incumbrance by paying the full purchase price and value thereof on the indebtedness hereby secured, and all interest on such sums so paid shall cease and determine from the next semiannual interest payment thereafter, but no such sale shall be completed or this agreement be binding unless the third party is first consulted and the purchase price of such proposed sale is satisfactory to it.''

As applied to the question of when and under what circumstances the notes secured by that instrument may become payable, what means the paragraph of the deed of trust above quoted? As said, appellant contends that by its terms he is not bound to accept any money on the principal notes held by him until their maturity as expressed on their face, except such sums as defendants might obtain and offer to apply on the notes from an absolute sale of a part or all of the real estate named therein; while upon the other hand, respondents insist that the question from what source came the money to make a payment, partial or in full, on plaintiff's notes at any interest payment date, is a matter of concern to him only in so far and to the extent that if obtained from the sale of the real estate included in his deed of trust he might know that he should receive on his notes the full value of the land sold, which he would be required to release from the operation of his deed of trust, when a sale was made of the land in part or in whole with appellant's consent and approval; that in so far as concerned plaintiff, the second mortgage placed upon the land by defendants to raise the money to pay off their obligation to plaintiff is in effect a sale of the land.

If we cast aside the undisputed testimony of defendants as to what was said and talked between the parties to the deed of trust at the time it was being made, as to the manner of and the time when the notes secured thereby might and were expected to be paid, it would still be difficult to read the paragraph of the deed of trust above quoted and fail to be impressed with the

thought that both the maker and the payee of the notes secured thereby were contemplating their payment if possible before their face maturity, and that such was the privilege attempted to be conferred upon defendants, if they could in any way raise the money for that purpose; and we fail to see why the restrictions and conditions, contained in said paragraph of the deed of trust first above quoted, as to the circumstances under which the sale of the land named may be made, and the direction as to how the money to be derived therefrom is to be applied, should be considered as a curtailment of defendant's rights to pay off this secured indebtedness from other sources than that particularly specified in said paragraph, as appellant asserts.

It is not always correct in determining one's rights under a contract to say that, because there is provided in one part thereof a particular way in which a designated right may be exercised or a particular act may be done, all other ways of doing that act or exercising that right are excluded. Thus it is not necessarily true, as appellant seems to assume in this case, that because defendants were given the right, by the provisions of the paragraph above quoted from the deed of trust, to sell any part of the mortgaged real estate on plaintiffs being satisfied with the price to be received therefor, and by applying the money so received on plaintiff's secured indebtedness, and stopping all interest on the amount so paid, said indebtedness could not be paid off by defendants, with money received in any other way or derived from any other source. The provision for defendants' paying off the secured indebtedness before its face maturity, if possible, was unmistakably contemplated by the parties to the deed of trust, and as a means to accomplish that end defendants were given the right to sell the mortgaged real estate upon the terms and conditions prescribed in the paragraph in question. We think, as did the trial court to whom this case was first presented, that the question from whatever source came

the money to make the payment upon the notes in suit, was a matter of concern to plaintiff only in so far and to the extent that if defendants obtained the money from the sale of the mortgaged real estate, plaintiffs had the right to know that he would receive the full value of the land sold on his secured indebtedness.

The right to pay off the notes at any semiannual interest-paying period was one of the privileges given to defendants by the provisions of the deed of trust in question. The right to sell a part or the whole of the mortgaged real estate to assist in the accomplishment of that act was another. The qualification and restriction in said paragraph of the deed of trust containing that privilege to defendants apply naturally, necessarily and logically to the exercise by defendants of the latter right, but not to the former. If the right to sell all or any part of the mortgaged real estate was to be exercised by defendants, every notion of business propriety would at once suggest that the mortgagee holder of the secured notes should have some authority in determining its fair value, else his security might be frittered away by an unwise or fraudulent sale on part of the mortgagors; and after the right of sale had been exercised and the land was released from the operation of the deed of trust securing plaintiff's notes, nothing is more reasonable, natural or necessary than that a condition should be found inserted, as there was in the paragraph in question, to the effect that there should be an application of the funds realized from the sale of the mortgaged real estate to the payment of the mortgagor's indebtedness. Defendants' right to sell the mortgaged real estate very properly may be said to be affected by these conditions of the paragraph in question; but not so of their right to pay off their indebtedness at any semiannual interest-payment period provided. When this latter right has been exercised by defendants, plaintiff could have no further interest in or concern with any

conditions of the deed of trust. To him, when his secured indebtedness had been met and discharged or when a full and proper tender thereof had been made, the deed of trust became a lifeless instrument.

Though we do not agree with appellant, that defendants' right to pay off in part or in whole the notes before the maturity thereof as expressed upon their face is conditioned by the terms of the deed of trust upon the fact that the money used in such payment must have arisen from a sale of the mortgaged property, yet if the right of payment by defendants at any semiannual interest-payment period contemplated by the deed of trust, was thus clearly conditioned, we would still be disposed to hold that the money tendered by the defendants to plaintiff under the facts of this case came under that requirement. And though the second deed of trust placed on the property by defendants to procure the money with which to pay off plaintiff's notes was not a sale of the property in the sense that defendants' entire right and interest therein was passed absolutely to the grantee in that second deed of trust, as appellant defines a sale of property to be, yet there is by the very terms employed in that instrument a grant, bargain, sale and conveyance of the property named for the purpose specified in said instrument, and so far as concerned the plaintiff or any or all outside parties it is a disposition of the property named therein. The right of redemption in defendants and the condition upon which the conveyance to the grantee may be defeated, are matters in which the plaintiff, as the satisfied holder of the first set of secured notes, had no interest. We therefore hold that the judgment of the trial court upon the first count of defendants' answer was correct, and that the effect of the tender by defendants to plaintiff was to discharge the real estate of plaintiff's lien.

II. Upon the question of defendants' right to recover upon their counterclaim, however, we think the trial court was in error. Defendants' counterclaim was

predicated solely upon their right to recover the ten per cent penalty provided in section 4363, Revised Statutes 1899. No other damages are alleged, nor was there proof of any actual damage sustained by defendants on account of plaintiff's failure to acknowledge satisfaction on the margin of the deed of trust record of Greene county, or on account of his refusal to deliver a sufficient deed of release after request made by defendants so to do. The proof was simply that defendants tendered to the plaintiff the satisfaction fee of one dollar, along with the tender to him of the amount of the principal and interest due on all of their secured notes to October 1, 1899, and that they requested him to acknowledge satisfaction on the margin of the deed of trust record of Greene county or that he deliver to them a deed of release of said mortgaged property, and that plaintiff refused to accept any of the money so tendered or to comply with their request in any particular.

Section 4358, Revised Statutes 1899, provides:

"If any mortgagee, *cestui que trust* or assignee, or any executor or administrator of the mortgagee, *cestui que trust* or assignee, receive full satisfaction of any mortgage or deed of trust, he shall, at the request and cost of the person making the same, acknowledge satisfaction of the mortgage or deed of trust on the margin of the record thereof, or deliver to such person a sufficient deed of release of the mortgage or deed of trust; but it shall not in any case be necessary for the trustee to join in such acknowledgment of satisfaction or in such deed of release; and provided further, that when any mortgage or deed of trust shall be satisfied by a deed of release, the recorder shall note on the margin of the record of such deed of trust the book and page where such deed of release is recorded. In case satisfaction be acknowledged by the payee or assignee, or in case a full deed of release is offered for record, the note or notes secured shall be produced and cancelled in the presence of the recorder, who shall enter that fact

on the margin of the record and attest the same with his official signature; and no full deed of release shall be admitted to record unless the note or notes are so produced and cancelled, and that fact entered on the margin of the record and attested as above provided. If such note or notes are not presented for cancellation for the alleged reason that they have been lost or destroyed, the recorder, before allowing any entry of satisfaction to be made on the record, or any deed of release to be placed on file or record, shall require the *cestui que trust* named in the mortgage or deed of trust desired to be released or his legal representative, to make oath, in writing, stating that the notes or other evidences of debt named in the mortgage or deed of trust sought to be released have been paid and delivered to the maker thereof or his representative; and the recorder shall also require the maker of such note or notes, or his legal representative, to make affidavit, in writing, that the note or notes in question have been paid, and can not be produced because lost or destroyed, and that they are not then in the possession of any person having any lawful claim to the same; which said affidavit shall be attached to the record of the mortgage or deed of trust to be satisfied.''

By section 4363, supra, is provided the penalty the party receiving satisfaction on his mortgage demand must pay to the party aggrieved (the owner of the mortgaged premises) for failing to acknowledge satisfaction thereof on the records of the county in which the land is situate, and which reads as follows: ''If any such person, thus receiving satisfaction, do not, within thirty days after request and tender of cost, acknowledge satisfaction on the margin of the record, or deliver to the person making satisfaction a sufficient deed of release, he shall forfeit to the party aggrieved ten per cent upon the amount of the mortgage or deed of trust money, absolutely, and any other damages he may be able to prove he has sustained, to be recovered in any court of compe-

tent jurisdiction." Under the facts of this case the appellant clearly does not fall within the designation of those on whom the ten per cent penalty provided by section 4363, supra, is meant to be imposed.

Appellant never received satisfaction on his mortgaged debt held against respondents, but on the contrary refused absolutely to receive the money tendered him by respondents on the ground that the amount tendered was not sufficient to cover his claim with the interest he was entitled to thereon as expressed upon the face of said obligations, and because respondents had not complied with the provision of the deed of trust securing said obligation and authorizing their payment at an earlier or different date than that named on their face.

Statutes imposing penalties such as that provided in section 4363, supra, must be strictly construed, and when one proceeded against falls not within the letter of its terms, the penalty is not enforcible.

It follows, therefore, that the judgment of the trial court will be reversed in so far as it gives to defendants a judgment on their counterclaim for seven hundred and twenty-eight dollars, and that the cause should be remanded to the circuit court with directions that it modify its order and judgment in accordance herewith, and it is so ordered. *Brace, P. J.,* absent; *Marshall* and *Valliant, JJ.,* concur.