Louise MURRAY, individually and as a representative of a class, Plaintiff/Appellant,

v.

FLEET MORTGAGE CORP., a corporation, Defendant/Respondent.

No. 70064.

Missouri Court of Appeals, Eastern District, Division Two.

Dec. 17, 1996.

**214**

James P. Holloran, St. Louis, for appellant.

James W. Erwin, Roman P. Wuller, Thompson Corburn, St. Louis, for respondent.

CRANE, Presiding Judge.

Plaintiff, Louise Murray, individually and as a representative of a class, brought an action against defendant Fleet Mortgage Corp. (Fleet) to recover a statutory penalty under § 443.130 on the grounds that Fleet failed to deliver a release of a deed of trust within thirty days after a request and tender of costs. The trial court granted summary judgment in Fleet's favor for the reason that Murray did not tender to Fleet the required costs for release of the deed of trust. It dismissed the class action without prejudice because there was no class representative to represent the putative class. We affirm.

The following facts are not in dispute. Fleet was the holder of a deed of trust securing a promissory note dated August 8, 1989 in the amount of $106,050.00 on residential real estate located in Richmond Heights, Missouri. In May, 1993 plaintiff and her son, Richard Murray, assumed the note and deed of trust. Later in 1993 plaintiff decided to refinance the property through First National Bank of St. Louis (First National). Fleet sent a payoff statement dated October 25, 1993 to First National, showing a payoff amount of $104,982.52. The payoff statement recited: "[Fleet] is not responsible for collecting release fees and/or recording documents, unless indicated in this statement." Nothing to the contrary is indicated in the statement. Another paragraph of the payoff statement provided: "Please indicate address where satisfied documents should be sent." A blank space was designated for the address.

Closing occurred on November 17, 1993. First National, as settlement agent, prepared the settlement statement required by the Real Estate Settlement Procedures Act (RESPA). 12 U.S.C. § 2601 *et seq.* Included in the settlement charges to be paid by borrowers, plaintiff and Richard Murray, was a $15.00 fee on line 1201 to record the deed of release. The revised payoff amount to Fleet was $104,643.04, which covered the principal, interest and late charges, if any, due on the loan. The settlement charges were withheld from the new loan.

On November 17, 1993 First National sent Fleet, which was located in Milwaukee, Wisconsin, a cashier's check dated November 15, 1993 in the amount of $104,643.04 along with a letter requesting Fleet to forward the paid note, deed of trust, and deed of release as soon as possible to First National. First National issued a check to Commonwealth Title for the recording fee. Fleet executed a deed of release on February 9, 1994 and transmitted it to First National on February 18, 1994, with a cover letter requesting the release document be forwarded to St. Louis County for recording. The release was recorded in St. Louis County on March 31, 1994 for a fee of $15.00. Neither plaintiff nor First National tendered the recording fee to Fleet.

On July 27, 1994 plaintiff filed this action.[1] In Count I of her First Amended Petition, plaintiff sought to recover the ten per cent penalty under § 443.130 for Fleet's failure to record the deed of release within thirty days of First National's November 17, 1993 request. In Count II she sought to represent

---

1. The other borrower, Richard Murray, was not a party, but was an attorney on the original petition.

a class of similarly situated persons. Fleet filed a Motion for Summary Judgment on the grounds that plaintiff admitted that she did not tender the statutory costs to release the deed of trust to Fleet as required by § 433.130. Plaintiff also filed a motion for summary judgment. The trial court entered judgment pursuant to Rule 74.04 against plaintiff on Count I and dismissed Count II without prejudice.

## DISCUSSION

For her sole point on appeal, plaintiff asserts that the trial court erred in granting summary judgment since disputed issues of fact remained concerning whether First National acted as Fleet's agent in accepting plaintiff's tender of release costs or whether Fleet waived tender by stating in its payoff statement that it was not responsible for collecting release costs.

Section 443.060 RSMo Supp.1993 sets out a mortgagee's duty to provide a deed of release upon full payment of the underlying debt. It provides in part:

> If any mortgagee ... receive[s] full satisfaction of any security instrument, he shall, at the request and cost of the person making the same, deliver to such person a sufficient deed of release of the security instrument....

If the mortgagee fails to satisfy this duty within thirty days, § 443.130 provides for a ten per cent penalty to be forfeited to the mortgagor:

> If any such person, thus receiving satisfaction, does not, within thirty days after request and tender of costs, deliver to the person making satisfaction a sufficient deed of release, such person shall forfeit to the party aggrieved ten percent upon the amount of the security instrument, absolutely, and any other damages such person may be able to prove such person has sustained, to be recovered in any court of competent jurisdiction.

■■■ This statute provides for an absolute penalty of ten percent of the mortgage if a mortgagee fails to deliver a deed of release after satisfaction of a mortgage, a demand to the mortgagee for the release, and tender of costs. *Trovillion v. Countrywide Funding Corp.*, 910 S.W.2d 822, 824 (Mo.App.1995) (*Trovillion I* ). Mortgagors who have paid a mortgage debt are not entitled to the ten per cent penalty unless they show that, thirty days or more prior to the institution of suit, they requested the mortgagee to satisfy the record and accompanied the demand with a tender of the necessary cost. *Dunkin v. Mutual Benefit Life Ins. Co.*, 63 Mo.App. 257, 260–61 (1895). The term "costs" as used in these statutes means the recorder of deeds' fee for releasing the deed of trust. *Trovillion I*, 910 S.W.2d at 824. Statutes imposing penalties of this nature must be strictly construed. *Snow v. Bass*, 174 Mo. 149, 73 S.W. 630, 636 (1903); *Trovillion I*, 910 S.W.2d at 823; *Trovillion v. Chemical Bank*, 916 S.W.2d 863, 865 (Mo.App.1996) (*Trovillion II* ); *Martin v. STM Mortg. Co.*, 903 S.W.2d 548, 550 (Mo.App.1995).

### 1. The Trovillion Cases

■■■ For the statutory penalty to apply, the mortgagor must tender the recording costs to the mortgagee. *Trovillion I*, 910 S.W.2d at 824; *Trovillion II*, 916 S.W.2d at 865. In *Trovillion I*, the plaintiffs executed a note and deed of trust which was later assigned to Countrywide Funding Corporation. The plaintiffs subsequently refinanced the loan through Commerce Mortgage Corporation. Countrywide informed Commerce of the payoff amount by letter dated April 19, 1993 which advised Commerce that Countrywide "does not collect trustee or recording fees." On the settlement statement, Commerce charged the plaintiffs $18.00 as a recording fee for the deed of release. Commerce sent the payoff amount to Countrywide on April 23, 1993. In its transmittal letter, Commerce asked Countrywide to send the "documents necessary for the release of your lien" to a title company. The plaintiffs requested the release several times. Countrywide executed the release on September 9, 1993. There was no dispute that neither the plaintiffs nor anyone on their behalf tendered the fee to Countrywide. The trial court granted summary judgment in favor of Countrywide.

On appeal, the plaintiffs argued that the statute simply requires a tender of costs, and does not require tender to the mortgagee. *Trovillion I*, 910 S.W.2d at 824. They maintained they intended to pay and had the means to do so but that the fee was withheld either by a title company or the previous lender. *Id.* We affirmed, holding that a strict construction of the statute requires that the costs must be tendered to the holder of the note and deed of trust. *Id.* (citing *Perrin v. Johnson*, 124 S.W.2d 551, 555 (Mo. App.1939)); *Dunkin*, 63 Mo.App. at 260–61.

In *Trovillion II*, Chemical Bank held a mortgage on the plaintiffs' property. The plaintiffs contacted Farm and Home Savings Association about refinancing their mortgage. On October 12, 1993, Chemical received a request for payoff information from Farm and Home Savings. Chemical forwarded the payoff figure to Farm and Home. Chemical received a check from Investors Title Company on October 19, 1993 for the payoff amount which did not include the recording fee. The same day Chemical also received a letter from the plaintiffs requesting a recorded deed of release and informing Chemical that the recording fees were paid at the closing. At no time did the plaintiffs, or any other party, tender the fee to Chemical. Without reimbursement Chemical paid the recording fee and recorded the deed of release in February, 1994. On appeal we held the statute requires tender of the costs to the party receiving satisfaction and that the withholding of the recording fees at closing without submission to the mortgagee does not entitle the borrower to collect the penalty. *Trovillion II*, 916 S.W.2d at 865.

## 2. *Agency*

■ Plaintiff asserts the *Trovillion* cases should not apply because in this case issues of fact remained as to whether First National was Fleet's agent or whether Fleet waived tender. Plaintiff further argues that she was deprived the right to factually contest Fleet's assertion that it would have accepted her tender.

Plaintiff relies on *Tedesco v. Bekker*, 741 S.W.2d 896 (Mo.App.1987) to support her claim that payment of the recording fee to First National was sufficient to satisfy the tender requirement. In *Tedesco* defendants were individual lenders who had lent money to plaintiffs. Defendants had entered into a management agreement with Creative Funding, Inc. [CFI] which appointed CFI as their exclusive agent to manage the loan and collect all payments due. We found that this agreement gave CFI express authority to collect payment of the amount due on a note and that payment to CFI was the same as payment to the defendants. The plaintiffs requested a deed of release from both CFI and defendants. No issue was raised relating to a tender of recording costs. We held that the defendants' refusal to release the deed of trust upon request and upon payment of the loan to CFI violated § 443.130. *Id.* at 899.

*Tedesco* does not apply. In this case no evidence was presented to the trial court showing that Fleet had given First National authority to manage Fleet's loan or collect payments or recording fees on its behalf. First National was a new lender with its own interest in collecting recording fees and having the existing deed of trust released.

■ The facts in this record do not present a disputed agency question. Plaintiff argues that First National was "settlement agent" for the transaction and thus acted as agent for both parties, as plaintiff's agent to request the release and as Fleet's agent to collect the recording fees. We disagree.

■ First National was listed as the "settlement agent" on the standard real estate settlement form required by RESPA, 12 U.S.C. § 2603, and the regulations promulgated thereunder. Under RESPA and its regulations, the settlement agent is the person conducting the settlement who is responsible for completing the settlement form showing all charges and making it available to the required parties. 12 U.S.C. § 2603. We do not find anything in RESPA or the regulations thereunder making the settlement agent an agent of the borrower or, in a refinancing, the existing mortgagee.

■ Agency is a fiduciary relationship which results from the consent by one per-

son, the principal, to another, the agent, for the agent to act primarily on the principal's behalf and to be subject to the principal's control, and the consent of the agent to so act. Restatement (Second) Agency §§ 1, 13 (1957). The new lender in a refinancing of real estate is not generally the agent of the borrower or of the existing mortgagee because it does not act on the other parties' behalf and is not subject to the other parties' control.

■■■■■ A lender is not ordinarily the agent for the borrower. *UT Communications Credit v. Resort Dev.,* 861 S.W.2d 699, 710 (Mo.App.1993). Activities such as preparing loan closing and land settlement documents, forwarding funds to the title company for disbursement, or forwarding documents to the title company for recording are all activities taken by a lender for its own benefit, not for the benefit of the borrowers. *Id.* Plaintiff offered no evidence that First National held itself out to her as her agent for the purpose of protecting plaintiff's interest at the loan closing. Although plaintiff testified she relied on First National to "act as [her] agent to make sure everything was properly taken care of" because she was not "that familiar" with deeds of trust, she offered no evidence that she asked First National to protect her interest or that First National consented to do so. First National was acting to protect its own interests as the new lender on plaintiff's real estate and not as plaintiff's agent.

■■■■■ Furthermore, the facts in this record do not establish that First National was Fleet's agent. A lender who refinances a property is not ordinarily the agent for the previous lender. In obtaining for recording the signed deed of release, collecting the recording fee from the borrower, and transmitting the items to an escrow agent for recording, a lender refinancing a property is acting to protect its own interest and priorities in the refinanced property, and not to help the original lender satisfy its obligations. Plaintiff adduced no evidence in support of her summary judgment motion that Fleet relied on First National to collect fees on its behalf or that First National consented to undertake to collect a fee on

Fleet's behalf. Rather, the evidence disclosed that Fleet took the position that it would not be responsible for collecting fees; not that it had appointed an agent to collect fees for it. There is a distinction between not undertaking an action at all and undertaking an action through an agent.

■■■■■ Plaintiff also argues that the payoff instructions created apparent authority in First National to act as Fleet's agent. As we have already stated, by this language Fleet declined responsibility for collecting fees; it did not appoint an agent to collect fees on its behalf. Further, Fleet's communications were to First National, not to plaintiff. Plaintiff had no communication with Fleet. Apparent authority is created by the principal's manifestations to the third party which causes the third party reasonably to believe that another has authority to act for the principal. *Nichols v. Prudential Ins. Co.,* 851 S.W.2d 657, 661–62 (Mo.App.1993). Since the communications were not made to plaintiff, she cannot rely on them to claim First National had apparent authority to act as Fleet's agent to accept her tender of recording fees.

### 3. *Waiver*

■■■■■ Likewise, the recital in the payoff statement to First National that Fleet is not responsible for collecting recording fees does not constitute a waiver. In *Trovillion I* the deed of trust holder advised the new lender that it "does not collect trustee or recording fees." We held that the mortgagee's policy concerning its collection of recording fees was not the issue because the statute requires the borrower to tender the costs. *Trovillion I,* 910 S.W.2d at 824. Plaintiff challenges the truth of Fleet's representative's statement that it would have accepted payment. However, a tender can be made whether it is accepted or not. The requirement would have been satisfied had the fees been tendered to Fleet. *Campbell v. Seeley,* 38 Mo.App. 298 (1889).

■■■■■ In addition, this recital does not constitute a waiver of tender of the recording fees. A waiver is the intentional relinquishment of a known right. *Howe v. Lever Bros.*

*Co.*, 851 S.W.2d 769, 775 (Mo.App.1993). To rise to the level of a waiver, the conduct "must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of [the] conduct is possible." *Id.* (quoting *Waterwiese v. KBA Const. Managers, Inc.*, 820 S.W.2d 579, 585 (Mo.App. 1991)).

There was a reasonable explanation of why Fleet did not collect recording fees in the record. A representative of Fleet testified that it did not collect fees because Missouri statutes did not require it to collect the fees. Further, Fleet's payoff letter was addressed to First National, not to the borrowers. Fleet's conduct does not, therefore, clearly evince an intent to waive tender so as to render it subject to the statutory penalty for not delivering a deed of release within thirty days of tender.

*Conclusion*

Plaintiff asks that we interpret the statute in light of its purpose so as to give plaintiff the right to a penalty for Fleet's late filing. Statutes nearly identical to §§ 443.060 and 443.130 have existed in Missouri over one hundred and sixty years. "Mortgages," §§ 13 and 14 RSMo 1835; *Phelps v. Relfe*, 20 Mo. 479, 481 (1855). Over that time certain mortgage lending practices have changed and many do not involve face-to-face transactions. *Trovillion I*, 910 S.W.2d at 823. Many mortgage lenders operate on a nationwide basis. In addition federal statutes control many aspects of home mortgage lending. *See e.g.* RESPA, 12 U.S.C. § 2601 *et seq.;* Truth in Lending Act, 15 U.S.C. § 1639.

In a refinancing, as illustrated by this case, *Trovillion I*, and *Trovillion II*, loan closing practices have developed in which the mortgagor does not, as a matter of course, tender release costs to the existing mortgagee. Although nothing prevents a mortgagor, on his or her own initiative, from tendering the fee and demanding the release, if the mortgagor does not do so, and the loan closing procedure does not involve a tender from the mortgagor to the existing mortgagee, the mortgagor cannot collect the statutory penalty if the release is not timely filed. However, it is a matter for the legislature, and not

the courts, to review current loan closing practices, in light of the purpose of § 443.130 and its strict penal provisions, to determine if changes to the conditions which give rise to the statutory penalty should be made.

The judgment of the trial court is affirmed.

GERALD M. SMITH and PUDLOWSKI, JJ., concur.